# Parker Poe

**Stephen V. Carey**
t: 919.835.4011
f: 919.834.4564
stevecarey@parkerpoe.com

Atlanta, GA
Charleston, SC
Charlotte, NC
Columbia, SC
Greenville, SC
Raleigh, NC
Spartanburg, SC
Washington, DC

*Application DENIED. Fact Discovery concludes on April 18. Counsel for the defendant may at the proper juncture file a Pre-Motion letter for a Motion for summary judgment motion. SO ORDERED / P. Kevin Castel, USDJ / 3-26-24*

March 15, 2024

**Via ECF**

The Honorable Kevin P. Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Perkins v. The New York Times Company d/b/a The New York Times*, Case No. 1:22-cv-05202 (PKC)

Dear Judge Castel:

Pursuant to Paragraph 3(A) of the Court's Individual Practices, Defendant The New York Times Company ("The Times") respectfully submits this Pre-Motion Letter in anticipation of moving under Rules 12(c) and 12(h)(3) of the Federal Rules of Civil Procedure for dismissal based on Plaintiff's lack of Article III standing. In its May 2023 decision on The Times's motion to dismiss, the Court raised *sua sponte* its concern about Plaintiff's standing, warning that "Perkins must ultimately prove that she actually suffered a concrete harm because the Times did not clearly and conspicuously state how to cancel a subscription under subsection (a)(2) and did not identify in boldface the terms required under subsection (a)(4)." (ECF No. 33 at 14–15). Although discovery is not complete, the discovery conducted to date confirms that Plaintiff cannot do that. Accordingly, this Court lacks subject matter jurisdiction, and Plaintiff's lawsuit should be dismissed. In addition, because the Times's motion raises a substantial challenge to the Court's subject-matter jurisdiction and Plaintiff's standing to bring suit, The Times also respectfully requests that the Court stay all discovery and case deadlines pending the outcome of The Times's jurisdictional motion. The next Case Management Conference is scheduled for May 3, 2024.

**I.   Background.**

In February 2020, Plaintiff Megan Perkins ("Plaintiff") enrolled in a digital subscription to The Times's News product. Plaintiff's subscription automatically renewed every four weeks, and she was charged upon renewal, $4 per billing period for the first year and $8 thereafter. She paid through a PayPal account and received an email from PayPal notifying her of the amount of each payment and that The Times was the recipient. She was free to cancel the subscription at any time.

March 15, 2024
Page 2

Plaintiff accessed The Times's digital content nearly 100 times before she cancelled on December 6, 2021. She experienced no difficulty in cancelling her subscription, retained access through December 31, 2021, and was never charged again.

Yet, through this suit, Plaintiff seeks financial compensation based on allegations that The Times violated a North Carolina statute concerning contracts that automatically renew (the "ARS"). First, she alleges that The Times did not clearly and conspicuously explain how to cancel her subscription in her initial contract, contract offer, or with the delivery of the digital services, under subsection (a)(2) of the ARS. (ECF No. 1, ¶¶ 26–27, 35–36, 53). Second, she alleges that The Times violated subsection (a)(4) of the ARS by not using 12-point, bolded font to disclose the subscription's price increase. (*Id.*, ¶¶ 31–32).

These two alleged technical violations of the ARS are all that remains of this case, after this Court dismissed Plaintiff's other claims in its May 2023 order granting in part The Times's Motion to Dismiss. (*See generally* ECF No. 33). Also in that order, the Court raised *sua sponte* Plaintiff's Article III standing, advising that she would ultimately need to prove that she meets Article III's requirements. (*Id.* at 14–15). The Court also explained that the ARS does not afford monetary relief, as the only express remedy provided under the statute is that a violation of the ARS renders the subject automatic-renewal clause void and unenforceable. (*Id.* at 16).

## II.    Basis for Motion Under Rules 12(c) and 12(h)(3).

Article III of the U.S. Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *Id.* (cleaned up). And to establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (cleaned up). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id.* (cleaned up). Plaintiff cannot meet any of the three requirements.

***No Injury-In-Fact.*** Plaintiff has suffered no injury in fact because a mere formatting error or an allegedly inconspicuous disclosure, without more, is not a concrete harm under Article III. Under (a)(2), Plaintiff claims The Times did not clearly and conspicuously disclose how to cancel her subscription. But, at her deposition, Plaintiff could not identify the specific disclosures she received and, after reviewing several versions of the relevant disclosures, Terms of Sale and Service, and communications, she testified that nothing in them was confusing or ambiguous. Plaintiff further testified that she ultimately cancelled her subscription without difficulty. Plaintiff, therefore, suffered no injury. Plaintiff further claims that The Times violated (a)(4) by not disclosing information about a future change in price in 12-point, bolded font. But the U.S. Supreme Court has held that such a formatting mistake, standing along, is not a concrete injury under Article III, because it is not "a harm with a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424. Plaintiff cannot identify any other harm suffered in connection with the alleged violations. She

March 15, 2024
Page 3

received and used the services she paid for, received actual notice of every one of her payments, and cancelled her subscription without incident several months before filing this lawsuit.

***No Causation.*** Plaintiff cannot articulate any hypothetical injury that is fairly traceable to the alleged violations under (a)(2) and (a)(4). Starting with (a)(2), Plaintiff cannot demonstrate causation between any alleged failure to conspicuously disclose the cancellation method at the time of subscribing and any hypothetical injury. In fact, Plaintiff cancelled her subscription on her first attempt, admits that information about how to cancel was available to her at the time she subscribed, that the information was neither confusing nor ambiguous, and that she simply did not read it. She also admits that, aside from The Times, she has enrolled in and cancelled numerous other digital subscriptions. To the extent Plaintiff asserts that she would not have subscribed had the cancellation procedures been more clearly disclosed, that assertion is too speculative and tenuous to satisfy Article III. *See Dept. of Educ. v. Brown*, 600 U.S. 551, 568 (2023). The same analysis applies to any alleged violation of (a)(4)'s formatting requirements. That is, for similar reasons, she cannot identify how any alleged formatting insufficiency caused her any harm.

***Not Redressable.*** The ARS has only one express remedy: to render the automatic renewal clause void and unenforceable. *See* ECF No. 33 at 16 (quoting N.C.G.S. § 75-41(e)). Any hypothetical injury would not be redressed by a favorable ruling in this case because Plaintiff cancelled her subscription years ago—prior to filing the lawsuit—leaving no automatic renewal clause to enforce or to void and thus no continuing or future harm to remedy. To the extent Plaintiff seeks monetary relief, such relief is not available under the plain language of the ARS. And any claim for which Plaintiff *could* have recovered monetary relief has been dismissed for failure to state a claim. Specifically, the Court dismissed her unjust enrichment claim, through which she sought restitution, and her claim alleging unfair and deceptive conduct in violation of N.C.G.S. § 75-1.1, through which she sought monetary relief.

### III.  Request to Stay Discovery and Adjourn Deadlines for Further Motions.

As courts in this district have explained, when "arguments set forth in the Rule 12(b)(1) dismissal motion are colorable and raise threshold challenges to the Court's subject-matter jurisdiction and Plaintiff's standing to bring suit" and the "motion, if granted, would result in the dismissal of the entire action," these factors "weigh in favor of a stay of discovery pending the outcome of the jurisdictional motion." *Renois v. WVMF Funding LLC*, No. 20cv09281 (LTS) (DF), 2021 WL 1721818, *1 (S.D.N.Y. Apr. 30, 2021) (citing cases). That is so because to continue discovery is to have any discovery disputes adjudicated by a court that may ultimately find it had no jurisdiction to make such adjudications and imposes discovery costs that will be rendered unnecessary if the Court dismisses the action. The same rationale applies with even more force to rulings on class certification and summary judgment. A short delay to obtain a ruling on standing, followed by a minor extension of the deadlines in this action, imposes no prejudice on Plaintiff.

Accordingly, The Times respectfully requests—pursuant to Rule 26(c) and Paragraph 1(C) of the Court's Individual Practices—that the Court stay discovery and adjourn all pending case deadlines until after The Times's motion is resolved. Plaintiff consents to this request.

March 15, 2024
Page 4

Fact discovery is currently set to close on April 18, 2024. The parties have substantially exchanged documents and responded to interrogatories concerning Ms. Perkins's individual claims, and The Times has taken Plaintiff's deposition. The bulk of the remaining discovery relates to claims by the putative class, including documents about products to which the Plaintiff did not subscribe, and any depositions Plaintiff will take of the Times's witnesses. The burden of the remaining discovery—which is significant in light of the four-plus-year class period—will largely be imposed on The Times, further weighing in favor of a stay. *Id.* at *2. On the other hand, Plaintiff consents to the stay and would otherwise suffer no prejudice, as any further discovery could prove unnecessary and inefficient. *Id.*

These same considerations also urge staying other case deadlines—such as the deadline for Plaintiff to file a motion for class certification and for the parties to submit Pre-Motion Letters relating to motions for summary judgment. There is little reason for the parties to bear the expense and burden of preparing these complex motions, briefing, and letters, on issues that largely turn on federal rules and standards, should the Court conclude that it lacks subject-matter jurisdiction in the first place. Relatedly, this critical issue should not be deferred to a different juncture in the case, such as at summary judgment. *See, e.g., Kantor v. Comet Press Books Corp.*, 187 F. Supp. 321, 322 (S.D.N.Y. 1960) ("Summary judgment is not the proper procedure to raise the question of the court's jurisdiction."); 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2713 (4th ed. 2023) ("[T]he general rule is that it is improper for a district court to enter a judgment under Rule 56 for [a] defendant because of a lack of jurisdiction."). Good cause, therefore, exists to stay all future case deadlines pending resolution of The Times's proposed jurisdictional motion.

The Court previously granted the parties' joint request to adjourn the initial pretrial conference pending resolution of The Times's Motion to Dismiss the Complaint. No other adjournments or extensions have been requested. Because The Times does not currently know when its jurisdictional motion will be resolved, it is unable to provide a meaningful Revised Case Management Plan and Scheduling Order at this time. Should the Court ultimately determine that Plaintiff's case can proceed in federal court, however, The Times proposes that the parties be required to provide a Revised Case Management Plan and Scheduling Order, with deadlines commensurate with those set forth in the current schedule, within 7 days of the Court's ruling.

\* \* \*

Accordingly, The Times respectfully requests (1) permission to move for judgment on the pleadings for lack of standing and (2) that the Court stay discovery and adjourn other case deadlines pending resolution of the jurisdictional motion.

The Times proposes that: (1) its motion shall be due 7 days after the Court grants its request to file the motion; (2) Plaintiff's response shall be due 14 days after The Times files its motion; and (3) The Times's reply shall be due 7 days after Plaintiff files its response. The Times can also provide additional briefing on its request for a stay, should such briefing be helpful to the Court.

March 15, 2024
Page 5

                                        Sincerely,

                                        Stephen V. Carey

SVC