# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGAN PERKINS on behalf of herself and all others similarly situated, | Civil Action No. 1:22-cv-05202-PKS |
| Plaintiff, | |
| v. | |
| THE NEW YORK TIMES COMPANY, d/b/a *THE NEW YORK TIMES,* | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated: July 26, 2024

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Alec M. Leslie
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
          aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
J. Hunter Bryson (*pro hac vice*)
405 E. 50th Street
New York, NY 10022
Telephone: (202) 640-1167
E-mail: hbryson@milberg.com

Nick Suciu, III (*pro hac vice*)
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
E-mail: nsuciu@milberg.com

*Proposed Class Counsel*

**TABLE OF CONTENTS**

PAGE(S)

INTRODUCTION ................................................................................................ 1

I.      FACTUAL AND PROCEDURAL BACKGROUND......................................... 3

      A.     Factual Background ................................................................. 3

      B.     Procedural Background............................................................ 3

ARGUMENT .................................................................................................. 5

II.     THE COURT SHOULD PRELIMINARILY APPROVE THE
PROPOSED SETTLEMENT ........................................................................ 5

      A.     The Terms of the Settlement Are Substantively Fair, Adequate,
and Reasonable ....................................................................... 5

            1.     Complexity, Expense, and Likely Duration of the Litigation
(*Grinnell* Factor 1) ...............................................................6

            2.     The Reaction of the Class (*Grinnell* Factor 2)............................7

            3.     The Stage of the Proceedings and the Amount of Discovery
Completed (*Grinnell* Factor 3)...............................................7

            4.     Plaintiff Would Face Real Risks if the Case Proceeded
(*Grinnell* Factors 4 and 5).....................................................8

            5.     The Risks of Maintaining a Class Through Trial (*Grinnell*
Factor 6) ............................................................................10

            6.     Defendant's Ability to Withstand a Greater Judgment
(*Grinnell* Factor 7) ............................................................10

            7.     The Reasonableness of the Settlement in Light of the
Possible Recovery and the Attendant Risk of Litigation
(*Grinnell* Factors 8 And 9).................................................10

      B.     The Remainder of the Rule 23(e)(2) Factors Support Preliminary
Approval ............................................................................. 12

            1.     The Allocation Plan is Fair and Adequate ...............................12

            2.     The Proposed Form and Method of Providing Notice to the
Proposed Settlement Class are Appropriate...............................13

            3.     Attorneys' Fees and Expenses are Reasonable ..........................14

            4.     The Parties Have No Additional Agreements...........................16

            5.     Proposed Settlement Class Members are Treated Equitably ....................16

III.    PROVISIONAL CERTIFICATION OF THE PROPOSED
SETTLEMENT CLASS IS APPROPRIATE................................................. 16

A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a) ........................................................................................ 18

    1.    Numerosity ...............................................................................18

    2.    Common Questions of Law and Fact .......................................18

    3.    Typicality .................................................................................19

    4.    Adequacy ..................................................................................20

B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ..................... 22

    1.    Common Issues Predominate Over Any Individual Ones ........22

    2.    A Class Action is a Superior Mechanism .................................23

IV.    THE COURT SHOULD PRELIMINARILY APPOINT NAMED PLAINTIFF AS THE SETTLEMENT CLASS REPRESENTATIVE ........................... 24

V.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ..................... 24

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................ 16, 22, 23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ................................................................ 24

*Berger v. Home Depot USA Inc.*,
    2011 WL 13224881 (C.D. Cal. Mar. 18, 2011)................................................ 9

*Brown v. Title Ticor Ins. Co.*,
    982 F.2d 386 (9th Cir. 1992) ................................................................ 22

*City of Detroit v. Grinnell Corp.*,
    495 F.2d (2d Cir. 1974) ................................................................Passim

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ................................................................ 18

*County of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1422 (E.D.N.Y. 1989) ................................................................ 17

*deMunecas v. Bold Food, LLC*,
    *2010 WL 3322580* (S.D.N.Y. Aug. 23, 2010) ................................................................ 15

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ................................................................ 20

*Dziennik v. Sealift, Inc.*,
    2007 WL 1580080 (E.D.N.Y. May 29, 2007)................................................................ 20

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014)................................................................ 20, 21

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014)................................................................ 18

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................Passim

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)................................................................ 12

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) ................................................................ 23

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................... 16, 24

*Hicks v. Morgan Stanley & Co.,*
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...................................... 15

*In re AOL Time Warner, Inc.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .......................................... 7

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................... 6, 8, 10

*In re First Am. Home Buyers Prot. Corp. Class Action Litig.*,
    313 F.R.D. 578 (S.D. Cal. 2016) .......................................................... 9

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("*In re*,
    55 F.3d 768 (3d Cir. 1995) ........................................................... 16, 17

*In re Lloy'd Am. Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)................................... 15

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007)....................................................... 11

*In re Merrill Lynch & Coj., Inc. Research Reports Sec. Litig.*,
    2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...................................... 13

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) ............................................. 12

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x 760 (2d Cir. 2020)...................................................... 11

*In re Payment Card Interchange and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019)......................................................... 13

*In re Prudential Insur. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ....................................................... 23

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d. Cir. Oct. 10, 2001) ............................................. 23

*In re Warner Chilcott Ltd. Sec. Litig.*,
    2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)...................................... 7

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ................................................................................... 11

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ............................................................................................. 12

*Lenahan v. Sears, Roebuck & Co.*,
  2006 WL 2085282 (D.N.J. July 10, 2006) ........................................................................ 17

*Maley v. Del Global Technologies Corp.*,
  186 F.Supp.2d 358 (S.D.N.Y. 2002) ................................................................................. 15

*Marisol A. v. Giuliani.*,
  126 F.3d 372 (2d. Cir. Sept. 26, 1997) ............................................................................ 19

*Martens v. Smith Barney Inc.*,
  181 F.R.D. 243 (S.D.N.Y. 1998) ....................................................................................... 20

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ....................................................................................... 22

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................................. 13

*Milonas v. Williams*,
  691 F.2d 931 (10th Cir. 1982) .......................................................................................... 19

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ............................................................................................. 11

*Ortega v. Uber Techs.*,
  2018 WL 4190799 (E.D.N.Y. May 4, 2018) ...................................................................... 14

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) .......................................................................................................... 22

*Quezada v. Loan Ctr. of Cal., Inc.*,
  2009 WL 5113506 (E.D. Cal. Dec. 18, 2009) ..................................................................... 9

*Robidoux v. Celani*,
  987 F.2d 931 (2d. Cir. Mar. 10, 1993) .............................................................................. 19

*Robinson v. OnStar, LLC*,
  2020 WL 364221 (S.D. Cal. Jan. 22, 2020) ........................................................................ 9

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ........................................................................ 22

*Spicer v. Pier Sixty, LLC*,
   2012 WL 4364503 (S.D.N.Y. Sept. 14, 2021) ............................................ 15

*Strauss v. Little Fish Corp.*,
   2020 WL 4041511 (S.D.N.Y. July 17, 2020) .............................................. 15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F.Supp.2d 254 (S.D.N.Y. 2003) .......................................................... 15

*Surdu v. Madison Glob., LLC*,
   2017 WL 3842859 (S.D.N.Y. Sept. 1, 2017) .............................................. 2

*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981) .............................................................. 6

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
   2004 WL 2997957 (S.D.N.Y. May 14, 2004) ............................................ 12

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ................................................................... 6

*Torres v. Gristede's Oper. Corp.*,
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ............................................ 8

*Toure v. Cent. Parking Sys.*,
   2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ............................................ 20

*Trinidad v. Breakaway Courier Sys., Inc.*,
   2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ............................................... 19

*Vaccaro v. New Source Energy Partners L.P.*,
   2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ............................................ 11

*Wagner v. NutraSweet Co.*,
   95 F.3d 527 (7th Cir. 1996) ........................................................................ 19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................. 18, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) .......................................................................... 25

*Zeltser v. Merrill Lynch & Co., Inc.*,
   2014 WL 4816134 (S.D.N.Y. April 28, 2017) ........................................................................ 15

*Zivkovic v. Laura Christy LLC*,
   329 F.R.D. 61 (S.D.N.Y. 2018) .............................................................................................. 18

**STATUTES**

N.C.G.S. § 75-41 ....................................................................................................................Passim

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 4

Fed. R. Civ. P. 23 ..................................................................................................................Passim

**OTHER AUTHORITIES**

*Newberg on Class Actions* (4th ed. 2002) .................................................................................. 16

## INTRODUCTION

In this putative class action, filed on June 21, 2022, Plaintiff Megan Perkins ("Plaintiff") alleges that Defendant The New York Times Company d/b/a *The New York Times* (the "Times" or "Defendant") enrolled Plaintiff and other Class Members in automatic renewal newspaper subscriptions without providing or formatting certain disclosures as required under North Carolina's Automatic Renewal Statute, N.C.G.S. § 75-41 (the "ARS"). Plaintiff seeks monetary relief for this alleged violation and originally brought claims for: (1) violation of N.C.G.S. § 75-41 (Count One); (2) unfair and deceptive trade practices under North Carolina law (Count Two); and (3) unjust enrichment (Count 3). In response to the complaint, on September 9, 2022, Defendant filed a motion to dismiss under Rule 12(b)(6), arguing that Plaintiff failed to state a claim upon which relief could be granted. The Court granted-in-part and denied-in-part Defendant's motion, which left Plaintiff's claim under Count One, and the parties engaged in fact discovery.

Since then, the Parties have been involved in extensive settlement discussions and disclosures, which culminated in a five-hour mediation on April 25, 2024 with Mark E. Isserles, an experienced neutral affiliated with JAMS. Although the Parties were unable to reach an agreement at the mediation itself, they continued to discuss settlement through Mr. Isserles and, with his help, were able to reach an agreement on all material terms of a class action settlement the next month. The agreement delivers immediate and significant relief to class members.

In exchange for a release of claims, Defendant has agreed to pay a Settlement Fund[1] amount of $275,000 to satisfy all amounts to be paid to the Class Members, the Service Award to Plaintiff, Settlement Administration expenses, and Class Counsel's attorneys' fees and costs. (*See*

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement.

Settlement Agreement ("SA") ¶¶ 1.37, 3.)  Settlement Class Members[2] who submit an Approved Claim are entitled to a settlement check from the Settlement Fund which shall be paid out based on the total number of Approved Claims submitted, subject to *pro rata* increase or decrease as the circumstances require, unless Class Members exclude themselves from the Settlement. (SA ¶¶ 1.3, 2.1.) Any funds remaining from unclaimed checks shall be divided and credited *cy pres* to organizations as recommended by Class Counsel and Defendant and approved by the Court. (SA ¶ 2.1(e).)  There is no reversion to Defendant. (*Id.* ¶ 1.37.)

This Court should find the $275,000 of the Settlement Fund to be a reasonable amount of compensation for the claims brought in this case. This is a significant sum awarded to Class Members in the face of what could be an expensive and complex case to present to a jury, as Defendant denies that it committed any wrongdoing or violated the ARS. *Surdu v. Madison Glob., LLC*, 2017 WL 3842859, at *11 (S.D.N.Y. Sept. 1, 2017) ("After deducting the service awards and attorneys' fees and costs, class members will receive approximately 50% of their claimed misappropriated tips. In light of the risks of litigation, this recovery weighs in favor of approving the settlement.").

As discussed below, this Settlement is fair, reasonable, and adequate and otherwise satisfies the requirements of Rule 23(a) and (b)(3) and the factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 488 (2d Cir. 1974).  Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Bursor & Fisher, P.A. and Milberg Coleman Bryson Phillips Grossman PLLC as Class Counsel; (4)

---

[2] Settlement Class Members are defined as "all Persons who are or were the Times digital, print, and ancillary subscription consumers who used a North Carolina billing and delivery zip code and were directly billed and automatically renewed by the Times from June 21, 2018, to and through June 2, 2023." (SA ¶ 1.35.)

appoint Megan Perkins as Class Representative for the Settlement Class Members; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice"), attached as Exhibits C-E to the Settlement Agreement, and direct distribution of the Proposed Notice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Plaintiff and Settlement Class Members are current and/or former subscribers to *The New York Times* in the state of North Carolina.  Plaintiff alleges that she and the alleged class members "sign[ed] up for *The New York Times* at the NYT Website or App" and Defendant enrolled them "in a program that automatically renew[ed]" their subscriptions from "month-to-month or year-to-year [which] results in monthly or annual charges to the consumer's credit card, debit card, or third party payment account" without "the requisite disclosures and authorizations required to be made to North Carolina consumers under N.C.G.S. § 75-41." Complaint (Dkt. No. 1) ("Compl.") ¶ 2.

Defendant has maintained that it acted properly, reasonably, and in accordance with the ARS and other applicable law.  Defendant denies all of Plaintiff's allegations. Nevertheless, the Times has agreed to the settlement to avoid the time, inconvenience, costs and uncertainty of protracted litigation.

### B.    Procedural Background

On June 21, 2022, Megan Perkins filed a putative class action complaint in the United States District Court for the Southern District of New York.  The complaint alleges that Defendant should not have enrolled Plaintiff and other Class Members in automatic renewal newspaper subscriptions without providing or formatting certain disclosures as required under ARS. (Compl. ¶¶ 1-2.)  Based on Defendant's alleged conduct, the Complaint sought monetary relief and brought claims for: (1) violation of N.C.G.S. § 75-41 (Count One); (2) unfair and deceptive trade practices

under North Carolina law (Count Two); and (3) unjust enrichment (Count 3). (Compl. ¶¶ 52-70.)

In response to the Complaint, on September 9, 2022, Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 22-24.) Among other things, Defendant argued that it complied with the ARS; that Plaintiff's unfair and deceptive trade practices claim failed because Plaintiff did not allege facts supporting a claim for unfair and deceptive trade practices and because ARS subsection 75-41(e) sets forth the exclusive remedy for a violation of the ARS; and that Plaintiff failed to state an unjust enrichment claim because the parties' relationship was governed by an express contract. Plaintiff filed her opposition brief on September 30, 2022 (Dkt. 32), and Defendant filed a reply brief on October 14, 2022 (Dkt. 27).

On May 23, 2023, the Court issued an Opinion and Order granting in part and denying in part Defendant's motion to dismiss. (Dkt. 33). The Court denied the motion as to Plaintiff's claims asserted in Count One under ARS subsections 75-41(a)(2) and (a)(4). The Court deemed Plaintiff's claim asserted in Count One under ARS subsection 75-41(a)(3) to be voluntarily dismissed and granted the motion as to the remainder of Count One and the entirety of Counts Two and Three.

Defendant answered the Complaint on June 6, 2023. (Dkt. 35). The Parties engaged in a Rule 26(f) planning conference and a Rule 16 scheduling conference, and the Court issued a Civil Case Management Plan and Scheduling Order. (Dkt. 40–42, 45.)

The Parties proceeded to fact discovery, which closed on April 18, 2024. During discovery, the Defendant produced hundreds of pages of documents, answered written discovery, and deposed Plaintiff for over six (6) hours. Through discovery, the Parties were able to assess the size and scope of the putative class, along with the strengths and weakness of the claims and defenses. After the close of fact discovery, the Parties engaged in mediation before Mark E.

Isserles, an experienced and well respected neutral affiliated with JAMS, New York. The mediation took place on April 25, 2024, was conducted by Zoom, and lasted approximately five hours. The Parties engaged in contentious but good faith negotiations, which always were conducted at arms' length. Although the Parties were unable to reach an agreement at the mediation itself, they continued to discuss settlement through Mr. Isserles and, with his help, were able to reach an agreement on all material terms of a class action settlement. The Parties thereafter executed a term sheet.

On May 13, 2024, the Parties filed a joint letter informing the Court that the Parties had reached agreement on all material terms of a class action settlement and requesting that the Court enter an order staying all upcoming deadlines. On May 14, 2024, the Court entered an order granting in part and denying in part the Parties' request, staying all deadlines on the condition that a motion for preliminary approval of a class settlement be filed by July 12, 2024.

## ARGUMENT

## II.    THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

### A.    The Terms of the Settlement Are Substantively Fair, Adequate, and Reasonable

Under Rule 23(e)(2) a district court may approve a class settlement upon a finding that it "is fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2). In making that finding, courts are to consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account [certain considerations]; and (D) the proposal treats class members equitably relative to each other." *Id.* 23(e)(2)(A)–(D).

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted. In evaluating the

substantive fairness of a class action settlement, courts in the Second Circuit also consider the nine

factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d at 463. In finding that a settlement

is fair, not every factor must weigh in favor of settlement; "rather, the court should consider the

totality of these factors in light of particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216

F.R.D. 55, 61 (S.D.N.Y. 2003).

Taken together, the *Grinnell* factors and Rule 23(e)(2) weigh heavily in favor of

preliminarily approving the proposed Settlement.

1.    **Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to trial, Plaintiff seeks to avoid significant expense

and delay, and instead ensure recovery for the class. "Most class actions are inherently complex

and settlement avoids the costs, delays and multitude of other problems associated with them." *In

re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub.

nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts have consistently held that,

unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to

the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v.

Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception. As discussed herein, the Parties have engaged in extensive

motion practice and formal and informal discovery. Fraietta Decl. ¶ 5. The next steps in the

litigation would have been resolution by the Court of Plaintiff's forthcoming motion for class

certification, and Defendant's forthcoming motion for summary judgment. At minimum, these

efforts would be costly and time-consuming for the Parties and the Court, and create risk that a

litigation class would not be certified and/or that the Settlement Class Members would recover

nothing at all. The Times is represented by formidable defense counsel well-versed in litigation,

and the Times has indicated that it would continue to assert numerous defenses on the merits. *See*, *e.g.*, Answer (Dkt. No. 35) (raising 20 affirmative defenses). Plaintiff and Class Counsel are also aware that the Times would oppose class certification vigorously, file a summary judgment motion, and that the Times would prepare a competent defense at trial. Looking beyond trial, Plaintiff is also keenly aware that the Times could appeal the merits of any adverse decision, thereby further delaying any potential recovery for the Class.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal. Consequently, this *Grinnell* factor plainly weighs in favor of preliminary approval of the proposed Settlement.

### 2.    The Reaction of the Class (*Grinnell* Factor 2)

Since Notice of the Settlement has not yet been issued to the Class, it is not possible to gauge the reaction of the Class at this time. *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor 3)

This factor goes to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010)

(internal quotation omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

Here, Class Counsel are sufficiently well-informed of the strengths and weaknesses of the claims, having drafted the pleading and survived, in part, a motion to dismiss. Moreover, the Parties proceeded to fact discovery, which closed on April 18, 2024.  Through discovery, the Parties were able to assess the size and scope of the putative class, along with the strengths and weakness of the claims and defenses. Namely, the documents produced by the Times and Plaintiff's deposition highlighted the variety of risks of getting a class certified in this case.  As a result, Class Counsel was well-positioned to evaluate the strengths of Plaintiff's claims, the Times's defenses, and prospects for success.  This *Grinnell* factor thus also weighs in favor of preliminary approval.

### 4.    Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiff believes her case is strong, it is not without risk.  At the time of the settlement, the Times was prepared to seek permission to file a proposed motion for summary judgment, and had made it clear that it would vigorously contest the certification of a litigation class.  *See* Fraietta Decl. ¶¶ 14-15.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

In the context of this litigation, Plaintiff and the putative Class face risks in overcoming the Times's forthcoming summary judgment motion and certifying a class. Throughout Plaintiff's

deposition, numerous questions were asked by the Times to create individual issues among Plaintiff and class members. For example, the numerous documents interpreted by Plaintiff during her deposition, such as the confirmation email received by Plaintiff of her subscription and the autorenewal text at the time of checkout, would surely lead the Times to argue her interpretation of those items were subjective and class certification is not warranted. This is because "[e]ach consumer will necessarily have a different subjective understanding of OnStar's verbal and written disclosures" and "[w]hether, and to what degree, each and every customers understood these disclosures[ ] will necessarily vary from person-to-person and cannot be adjudicated on a class-wide basis." *Robinson v. OnStar, LLC*, No. 15-CV-1731 JLS (MSB), at ECF. No. 169 at 23-24 (S.D. Cal. Jan. 22, 2020) (citing *In re First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 609 (S.D. Cal. 2016); *Jones v. ConAgra Foods, Inc.*, 2014, WL 2702726, at *17 (N.D. Cal. June 13, 2014); *Berger v. Home Depot USA Inc.*, 2011 WL 13224881, at *4–5 (C.D. Cal. Mar. 18, 2011); *Quezada v. Loan Ctr. of Cal., Inc.*, 2009 WL 5113506, at *8 (E.D. Cal. Dec. 18, 2009).

There has never been a litigation class certified under the ARL statute at issue that Plaintiff is aware of, further increasing the risk that Plaintiff's class certification motion could have been denied. Even under the California autorenewal statute, classes have been denied due to individual issues regarding certain disclosures with companies. See *Robinson v. OnStar, LLC*, 2020 WL 364221 (S.D. Cal. Jan. 22, 2020) (denying class certification under the California Autorenewal Statute). Surely, there was considerable risk Plaintiff could have ever received class certification had she pressed forward.

Moreover, further litigation will only delay relief to the Settlement Class Members.  The proposed Settlement alleviates these risks, and provides a significant benefit to the Settlement

Class Members in a timely fashion.  These *Grinnell* factors thus favor preliminary approval.

5.    **The Risks of Maintaining a Class Through Trial (*Grinnell* Factor 6)**

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the proposed Class and such a determination would be reached only after exhaustive class certification briefing is filed.  Defendant would argue that individual questions preclude class certification.  The Times would also argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Were the Court to certify a class, the Times would likely challenge certification through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing.  Risk, expense, and delay permeate such a process.  The proposed settlement eliminates this risk, expense, and delay.  This factor weighs in favor of preliminary approval.

6.    **Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)**

Neither party takes a position, nor is there evidence, as to whether the Times could withstand a greater judgment.  That said, even assuming the Times could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178, n.9).  Thus, at worst, this factor is neutral.

7.    **The Reasonableness of the Settlement in Light of the Possible Recovery and the Attendant Risk of Litigation (*Grinnell* Factors 8 And 9)**

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which

recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), aff'd, 818 F.2d 145 (2d Cir. 1987).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, the total settlement value is $275,000, which represents a substantial portion of the total amount in controversy. This percentage of recovery is well above the recovery range of settlements that have received approval within this District. *See, e.g., In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages").

Defendant's settlement payment will also pay the costs of a service payment to Plaintiff, notice and administration costs, as well as reasonable attorneys' fees, plus costs and expenses for proposed Class Counsel from the all-in fund established by the Settlement. (SA ¶ 1.37.) Weighing

the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.  Moreover, where – as here – a "'settlement assures immediate payment'' of monetary amounts to Settlement Class Members, and not 'speculative payment of a hypothetically larger amount years down the road,'" the settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, at *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of preliminary approval.

In sum, all of the *Grinnell* factors weigh in favor of approval, or are neutral at worst.  If objections arise after notice is issued to the Class, the Court may reevaluate its determination. Because the settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

### B.    The Remainder of the Rule 23(e)(2) Factors Support Preliminary Approval

#### 1.    The Allocation Plan is Fair and Adequate

"Approval of a plan of distribution for a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole, i.e., the distribution plan must be fair, reasonable and adequate."  *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020).  Notably, an "allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent Class counsel."  *Id.*  Here, the Settlement distributes case relief on a *pro rata* basis, which has been found by courts in this Circuit to be equitable.  *See In re Payment Card Interchange and Merchant Discount Antitrust Litig.* 330 F.R.D. 11, 47 (E.D.N.Y. 2019); *see also Meredith Corp. v. SESAC,*

12

*LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the class members equitably … and has the benefit of simplicity").

2.    **The Proposed Form and Method of Providing Notice to the Proposed Settlement Class are Appropriate**

"Notice need not be perfect, but need be only the best notice practicable under the circumstance, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch & Coj., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007). Class Counsel respectfully submits that the proposed plan for notice is fair, reasonable, and adequate.

The Settlement Agreement seeks appointment of Analytics Consulting, LLC as the Claim Administrator to effectuate and administer the Notice Plan. As recited in the Settlement Agreement, the proposed direct email notice will inform Settlement Class Members of the Settlement's substantive terms. (SA ¶¶ 4.1-4.5.) It will advise Settlement Class Members of their options for remaining part of the Settlement Class or for opting out of the Settlement; for receiving their Settlement Benefits; for objecting to the Settlement, Class Counsel's attorneys' fee application and/or request for a service award to the named Plaintiff; and how to obtain additional information about the Settlement. (SA ¶¶ 4.1-4.5.) If an email notice to a Settlement Class Member is returned as non-deliverable, the Settlement Administrator shall send the notice in the form attached to the Settlement Class Member's billing or mailing address via First Class U.S. Mail, together with a postcard Claim Form with return postage prepaid. (SA ¶¶ 4.1(B)). For Settlement Class Members without an email address, the Settlement Administrator shall send the Notice via First Class U.S. Mail, together with a postcard Claim Form with return postage prepaid. *Id.* If any Notice is returned as non-deliverable, and a forwarding address is provided, the

13

Settlement Administrator shall re-mail the Notice to the forwarding address within five (5) business days. (SA ¶ 4.1(C)). If any Notice is returned as non-deliverable, and no forwarding address is provided, the Settlement Administrator shall attempt to ascertain a valid address for the affected Settlement Class Member by seeking change of address information through the U.S. Postal Service's National Change of Address Link, and shall re-mail the Notice within five (5) business days to the address(es) that are found. *Id.*

The proposed plan for notice is designed to directly reach a very high percentage of Settlement Class Members, with consideration that Settlement Class Members' contact information is readily available and maintained by Defendant. (SA ¶ 4.1.) The Claim Administrator will establish and maintain a Settlement Website, making available to the Settlement Class Members the documents, information, and online claims submission process referenced in paragraphs 2.1(b) through 2.1(d) of the SA. (SA ¶¶ 1.38; 4.1(d).)

Notice programs such as the one proposed by Class Counsel have been approved as adequate under the Due Process Clause and Rule 23. *See*, *e.g.*, *Ortega v. Uber Techs*., 2018 WL 4190799 (E.D.N.Y. May 4, 2018) (approving a notice plan of notice by email, with notice by mail for class members whose emails are undeliverable, and ordering the parties to create a settlement website). Accordingly, the Court should approve the plan for notice and the form and content of the notices.

### 3. Attorneys' Fees and Expenses are Reasonable

Class Counsel will apply for an award of attorneys' fees and expenses, for a service payment to the Class Representative, and will receive any applied-for fees and expenses only upon this Court's ruling regarding attorneys' fees and costs. Pursuant to the Settlement Agreement, Class Counsel will apply to the Court for a Fee Award not to exceed one-third of the Settlement Fund. (SA ¶ 8.1). Such a request for attorneys' fees is reasonable in comparison to other common-

fund settlements within the Second Circuit. *See*, *e.g.*, *In re Lloy'd Am. Trust Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (noting "scores of common fund cases where fees . . . were awarded in the range of 33-1/3% of the settlement fund."); *Spicer v. Pier Sixty, LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2021).

Accordingly, Class Counsel's attorneys' fee request is decidedly reasonable, particularly considering that "[d]istrict courts in this Circuit typically approve fee requests between 30% and 33% of the settlement." *Strauss v. Little Fish Corp.*, 19-cv-10158, 2020 WL 4041511, at *9 n.1 (S.D.N.Y. July 17, 2020) (collecting cases)); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) (awarding 30% of $10 million settlement fund, explaining that a "30% fee is consistent with fees awarded in comparable class action settlements in the Second Circuit" and "does not produce a windfall"). In fact, district courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater. *See, e.g., Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 189 (awarding attorneys' fees of 38.26 percent of $125,000.00 settlement fund); *Maley v. Del Global Technologies Corp.,* 186 F.Supp.2d 358, 369 (S.D.N.Y. 2002) (approving attorneys' fees of 33.3 percent of a $11.5 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,* 258 F.Supp.2d 254, 262 (S.D.N.Y. 2003) (awarding 33.33 percent of settlement fund); *deMunecas v. Bold Food, LLC, No. 09 Civ. 00440(DAB), 2010 WL 3322580,* at *9 (S.D.N.Y. Aug. 23, 2010) ("Class Counsel's request for **33 percent** of the Fund is reasonable under the circumstances of this case and is consistent with the norms of class litigation in this circuit."); *Zeltser v. Merrill Lynch & Co., Inc.*, No. 12 Civ. 1531(FM), 2014 WL 4816134, at *9 (S.D.N.Y. April 28, 2017) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'").

### 4.    The Parties Have No Additional Agreements

Apart from the Settlement Agreement itself, there are no additional agreements. *See* Fraietta Decl. ¶ 13.

### 5.    Proposed Settlement Class Members are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether class members are treated equitably. As reflected in the plan of allocation, *see supra* §§ II.B.1, the proposed Settlement treats Settlement Class Members equitably relative to each other, and all Settlement Class Members will be giving Defendant the same release.

Because the proposed Settlement satisfies both the Rule 23(e)(2) factors and the *Grinnell* factors, the proposed Settlement should be preliminarily approved.

## III.    PROVISIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE

Plaintiff respectfully requests that the Court conditionally certify the Settlement Class for purposes of effectuating the settlement.  The Court should determine that the proposed Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Newberg on Class Actions* § 11:27 (4th ed. 2002) (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768 (3d Cir. 1995)), and provisionally certify the settlement class, appoint Bursor & Fisher, P.A. and Milberg Coleman Bryson Phillips Grossman PLLC as Class Counsel, and Plaintiff Megan Perkins as the Class Representative.

As discussed below, all the certification requirements for settlement purposes are met and the Times consents to provisional certification. *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the

16

parties may stipulate that it be maintained as a class action for the purpose of settlement only.");

*County of Suffolk v. Long Island Lighting Co*., 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is

appropriate for the parties to a class action suit to negotiate a proposed settlement of the action

prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295

(2d Cir. 1990).

Provisional settlement approval, class certification, and appointment of class counsel have

practical purposes, including avoiding the costs of litigating class status while facilitating a global

settlement, ensuring notification of all class members of the terms of the proposed Settlement

Agreement, and setting the date and time of the final approval hearing. *See In re GMC*, 55 F.3d

at 784; *Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at *6 (D.N.J. July 10, 2006)

(conditionally certifying multi-state classes and granting preliminary approval to nationwide wage

and hour settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are

met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is
>     impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are
>     typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect
>     the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the members of the class
> predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

**A.      The Proposed Settlement Class Meets the Requirements of Rule 23(a)**

**1.      Numerosity**

Rule 23(a) requires that the members of the class be so numerous that joinder of all members is impracticable.  While numerosity does not require a fixed number of class members, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The Settlement Class likely consists of about 275,000 members. Therefore, the numerosity requirement of Rule 23(a) is readily satisfied.

**2.      Common Questions of Law and Fact**

Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This threshold is satisfied if the question is "capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[A] single [common] question will" satisfy the commonality inquiry.  *Id.* at 359.  "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018).  Rather, Rule 23(a)(2) is a "low hurdle," *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), that may be satisfied by even a single question of law or fact common to the class, *Wal-Mart Stores*, 564 U.S. at 369.

Plaintiff easily satisfies the "low hurdle" of demonstrating commonality.  Plaintiff believes this Action presents many questions common to the Settlement Class.  Plaintiff asserts common questions that include: (a) whether Defendant's subscriptions constitute "automatic renewals" within the meaning of N.C.G.S. § 75-41; (b) whether Defendant failed to provide the clear and conspicuous language required by N.C.G.S. § 75-41(1) and N.C.G.S. § 75-41(2); (c) whether Defendant disclosed the changing terms of the contract clearly and conspicuously on the

notification in at least 12 point type and in bold print as required by N.C.G.S. § 75-41(3); and (d) whether Plaintiff and the Class are entitled to damages and/or restitution. These common questions, which target the same alleged misconduct by the Times, satisfy Rule 23(a)(2).

### 3.    Typicality

The next requirement – typicality – requires that a class representative have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(2). Typicality is met here. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372 at 376 (2d. Cir. Sept. 26, 1997) (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux*, 987 F.2d at 936-37. Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Here, Plaintiff alleges that the Times violated N.C.G.S. § 75-41(a)(4) which states that: "If the terms of the contract will change upon the automatic renewal of the contract, disclose the changing terms of the contract clearly and conspicuously on the notification in at least 12 point type and in bold print." N.C.G.S. § 75-41(a)(4). Plaintiff asserts the the Times's checkout page does not comply with subsection (a)(4) because it does not display in bold, 12-point type the change to her subscription upon automatic renewal. (Compl. ¶¶ 31-33.) Instead, under the bolded,

capitalized heading "PAYMENT INFORMATION", the checkout page states that the subscriber's account will be charged $4 every four weeks for the subscriber's first year. (*Id*. ¶¶ 22, 32.) "It will then be automatically charged $17.00 every 4 weeks thereafter, starting on April 5, 2021 ($4.25 per week)." (*Id*.) This language does not comply because it is not bolded and in 12-point type. (*Id*. ¶ 32.) Accordingly, by pursuing her own claim in this matter, Plaintiff will necessarily advance the interests of the Settlement Class Members, and typicality is therefore satisfied. *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

### 4. Adequacy

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *65 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

In this case, Plaintiff – like every one of the Settlement Class Members – has paid for a subscription to *The New York Times* and had that initial subscription automatically renewed by the the Times without the Defendant satisfying the requirements of N.C.G.S. § 75-41(a)(4). (Compl. ¶¶ 45-47.) Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the damages to which they are allegedly entitled. As such, Plaintiff does not have any

interests antagonistic to those of the proposed Settlement Class Members and her pursuit of this litigation is clear evidence of that.

Likewise, proposed Class Counsel – Bursor & Fisher, P.A. – has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Fraietta Decl. ¶ 11. Class Counsel regularly engages in major complex class action litigation, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. *Id.*; *see also* Firm Resume of Bursor & Fisher, P.A., Fraietta Decl. Exhibit 2; *see also Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."). In addition, Milberg Coleman Bryson Phillips Grossman PLLC has a proven track record in the prosecution of complex class actions nationwide. Through their efforts in this litigation, Class Counsel has obtained a very substantial percentage of the alleged damages Plaintiffs sought to prove. Plaintiffs, therefore, satisfy the Rule 23(a) adequacy requirements.

Further, proposed Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class Members, aggressively pursuing those claims through motion practice, conducting both formal and informal discovery, participating in a private mediation, and ultimately, negotiating a favorable settlement. Fraietta Decl. ¶¶ 5-11. In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency. *Id.*

Accordingly, since Plaintiff and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class Members and neither have interests antagonistic

to the Settlement Class Members, the adequacy requirement is satisfied.

**B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. That Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently. *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992). This approach protects class members' due process rights. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

**1.    Common Issues Predominate Over Any Individual Ones**

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

22

In this case, there allegedly was a common course of conduct engaged in by the Times. In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues. *See In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous cases).

### 2.    A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[3]

Here, Plaintiff and the Settlement Class Members have limited financial resources with which to prosecute individual actions, and Plaintiff is unaware of any individual lawsuits that have been filed by Settlement Class Members arising from the same allegations. Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. *See Hanlon*, 150 F.3d at 1023. A class action is the

---

[3] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotation marks omitted).

most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims.

## IV.   THE COURT SHOULD PRELIMINARILY APPOINT NAMED PLAINTIFF AS THE SETTLEMENT CLASS REPRESENTATIVE

Plaintiff Megan Perkins has actively participated in this case and has vigorously represented the interests of the Settlement Class Members. Specifically, she has provided Class Counsel with information necessary to draft and file the complaint, responded to multiple information requests, and represented the Settlement Class Members in settlement discussions. Moreover, Plaintiff is adequate because her interests are not antagonistic to those of the Settlement Class Members. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Plaintiff, like members of the Settlement Class, claim to have been enrolled by Defendant in automatic renewal newspaper subscriptions without providing or formatting certain disclosures as required under ARS. Accordingly, the Court should preliminarily appoint Megan Perkins as the Settlement Class Representative.

## V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Here, the proposed Notice provides detailed information about the Settlement, including: 1) a comprehensive summary of its terms; 2) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and an incentive award for the Named Plaintiff; and 3) detailed

information about the Released Claims. *See* Settlement Exhibits C-E (annexed to Exhibit 1 of Fraietta Decl.).  In addition, the Notice provides information about the Fairness Hearing date, the right of Settlement Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information. *Id.*  In short, the Notice is intended to fully inform Settlement Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 114 (2d Cir. 2005).  The very detailed information in this proposed notice goes well beyond the requirements of the Federal Rules.  Indeed, courts have approved class notices even when they provided only general information about a settlement.  This information is adequate to put Settlement Class Members on notice of the proposed Settlement and is well within the requirements of Rule 23(c)(2)(B).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order preliminarily approving the proposed Settlement, provisionally certifying the proposed Settlement Class, appointing Plaintiff as Settlement Class Representative, appointing Bursor & Fisher, P.A. and Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel, and approving the proposed schedule.

Dated: June 26, 2024                              Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Philip L. Fraietta*
            Philip L. Fraietta

Philip L. Fraietta
Alec M. Leslie
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  pfraietta@bursor.com
            aleslie@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS**
**GROSSMAN, PLLC**

J. Hunter Bryson (*pro hac vice*)
405 E. 50th Street
New York, NY 10022
Telephone: (202) 640-1167
E-mail:  hbryson@milberg.com

Nick Suciu, III (*pro hac vice*)
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
E-mail:  nsuciu@milberg.com

*Proposed Class Counsel*